*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EMILY REIF,

Plaintiff-Appellant,

UNPUBLISHED
December 22, 2022

v

AUTO CLUB INSURANCE ASSOCIATION,
LIBERTY MUTUAL INSURANCE COMPANY,
and LUKE MORRELL,

Defendants,

and

ALAN RENZ and JULIE RENZ,

Defendants-Appellees.

No. 359741
Oakland Circuit Court
LC No. 2020-179790-NI

Before: M. J. KELLY, P.J., and MURRAY and RIORDAN, JJ.

PER CURIAM.

Plaintiff, Emily Reif, appeals as of right the trial court order granting summary disposition under MCR 2.116(C)(10) to defendants, Alan and Julie Renz. Because there are no errors warranting relief, we affirm.

## I. BASIC FACTS

In July 2019, Reif and her then-boyfriend, Steven Jackson, travelled to the Renzes' lakefront property in Hale, Michigan for a 4th of July party. The party was hosted by the Renzes' son, Luke Morrell,[1] and the Renzes were present.

On July 4, 2019, both Reif and Morrell consumed alcohol. Later, at approximately 1:00 p.m., Reif's boyfriend was playing with his dog in the lake in front of the Renzes' dock. Reif was

---

[1] Morrell was Julie Renz's son and Alan Renz's stepson.

-1-

sitting on the front edge of the dock with her legs in the water. She testified that when her boyfriend was standing in the water, she could see that the water "wasn't very high" and that it only came up "around his belly button or so." She added that her boyfriend was approximately 6' or 6'1" tall. Morrell also observed that the water level reached Reif's boyfriend's "chest range." He decided to push Reif in the water so that she could be with her boyfriend. He came up behind her without doing anything to warn her of his presence and pushed her lower back to get her into the lake. She entered the water feet first. Reif testified that "everything happened really fast." She described the mechanism of her injury as an impact with the bottom of the lake that caused her leg to hyperextend.

Reif could not get out of the lake on her own. She was pulled out of the water by her arms and was laid on the dock. She was provided with pain medication and ice, then, because the pain persisted, she was carried to her boyfriend's truck. He drove her to the hospital, and it was determined that she had broken her leg and needed surgery.

On February 20, 2020, Reif filed a complaint against the Renzes, bringing one count of premises liability and one of negligent entrustment.[2] Following discovery, the parties filed cross motions for summary disposition. Thereafter, the trial court entered an opinion and order summarily dismissing Reif's premises liability claim against the Renzes. Subsequently, the court entered a stipulated order dismissing with prejudice Reif's negligent entrustment claim against the Renzes. This appeal follows.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Reif argues that the trial court erred by granting summary disposition in favor of the Renzes. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). "A de-novo review means that we review the legal issue independently, without deference to the lower court." *Bowman v Walker*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355561) (quotation marks and citation omitted); slip op at 2. Reif also argues that the trial court erred by disregarding admissions that the Renzes made in their answer to her complaint. Resolution of that issue requires this Court to interpret court rules, which is a question of law reviewed de novo. See *Bint v Doe*, 274 Mich App 232, 234; 732 NW2d 156 (2007).

### B. ANALYSIS

### 1. ADMISSIONS IN ANSWER TO COMPLAINT

Both Reif's complaint and the Renzes' answer are pleadings. See MCR 2.110(A)(1) and (5) (stating that the term "pleading" includes "a complaint" and "an answer to a complaint . . . ."). A party is required to "file and serve a responsive pleading" to a complaint. MCR 2.110(B)(1).

---

[2] Reif also brought a negligence claim against Morrell; however, the court entered a stipulated order dismissing that claim with prejudice.

Thus, the Renzes' answer was a responsive pleading. Relevant to responsive pleadings, MCR 2.111(C) provides:

> (C) **Form of Responsive Pleading.** As to each allegation on which the adverse party relies, a responsive pleading must
>
> (1) state an explicit admission or denial;
>
> (2) plead no contest; or
>
> (3) state that the pleader lacks knowledge or information sufficient to form a belief as to the truth of an allegation, which has the effect of a denial.

Reif made the following allegations as it relates to her premises liability claim against the Renzes:

> 15. Defendants Alan and Julie Renz were in possession of said premises . . ., and had welcomed Plaintiff *as an invitee* at the time of the accident.
>
> 16. Defendants Alan and Julie Renz had a duty to provide a safe place *for invitees such as Plaintiff* and other similarly situated individuals, and to exercise due care in the operation and maintenance of said premises, so as to prevent injury *to its invitees*.
>
> 17. Further, Defendants Alan and Julie Renz had a duty *to Plaintiff and other invitees* to inspect the premises for dangerous conditions and to warn them of any dangerous conditions which they knew or should have known existed. [Emphasis added.]

In their answer, the Renzes responded to those allegations as follows:

> 15. Admitted upon information and belief.
>
> 16. Defendants admit any duties imposed by law but deny the breach of any such duties.
>
> 17. Defendants admit any duties imposed by law but deny the breach of any such duties.

It is apparent that the Renzes did not explicitly deny the allegations in paragraphs 15 through 17 of Reif's complaint, they did not plead no contest, and they did not state that they lacked knowledge or information sufficient to form a belief as to the truth of the allegations. Instead, they admitted each allegation. Although they included a proviso that the admission to paragraph 15 was upon "information and belief," such language does not transform their admission into an explicit denial, a plea of no contest, or a statement that they lack knowledge to admit or deny the allegation. Further, in paragraphs 16 and 17, they admit that they owe the duties alleged and deny only that they breached those duties. At best, the wording of the admissions to

paragraphs 15 through 17 of Reif's complaint result in a failure to "state an *explicit* admission" as required by MCR 2.111(C)(1).

Under such circumstances, the Renzes' answer to paragraphs 15 through 17 of Reif's complaint arguably failed to comply with the mandatory provisions set forth in MCR 2.111(C). Under MCR 2.111(E)(1), "[a]llegations in a pleading that requires a responsive pleading, other than allegations of the amount of damages or the nature of the relief demanded, *are admitted if not denied in the responsive pleading*." (Emphasis added). Thus, under the facts of this case, either the Renzes' statements in response to paragraphs 15 through 17 of Reif's complaint were sufficient to constitute explicit admissions under MCR 2.111(C)(1) or, because the allegations were not denied, they must be treated as admitted under MCR 2.111(E)(1). It is a long-standing principle of law in Michigan that an admission is "binding and may be acted upon when made in the pleadings which the rules require to be filed." *Detroit Trust Co v Smith*, 256 Mich 376, 379; 240 NW 12 (1931). Moreover, the trial court was required to consider the pleadings—which included the Renzes' admission that Reif was an invitee—when ruling on the motions for summary disposition. See MCR 2.116(G)(5).

Without explanation, the trial court disregarded the Renzes' admission that Reif was an invitee and determined that, based on the documentary evidence, she was only a licensee. Because the Renzes' statement in response to the allegations in paragraphs 15 through 17 of Reif's complaint were either explicit admissions under MCR 2.111(C)(1) or were treated as admissions under MCR 2.111(E)(1), and because such admissions—at least in the absence of an amendment to the pleadings—are binding, *Detroit Trust Co*, 256 Mich at 379, the trial court erred by determining that, contrary to the Renzes' admissions, Reif was a licensee.[3]

The error, however, is not dispositive. "In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 693; 822 NW2d 254 (2012) (quotation marks and citation omitted). The duty owed differs depending on the visitor's status. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000). Generally, "a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp*, 464 Mich 512, 516; 629 NW2d 384 (2001). A landowners duty to a licensee, however, is "a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved." *Stitt*, 462 Mich at 596.

Reif takes issue with the trial court's determination that the allegedly hazardous condition on the Renzes' property was the lake bottom and the depth of the water, not the dock. Yet, Reif's expert opined that the dock was "dangerous and defective" because it lacked a ladder and did not have a sign to warn users not to dive into the shallow water at the end of the dock. Viewing this

---

[3] We note that no motion to amend the pleadings was made in this case, and that, Reif stated that she would object in the event that such a request were made.

evidence in the light most favorable to Reif, we conclude that the trial court erred by limiting its analysis of the allegedly dangerous condition to the lake bottom and the depth of the water.

The court, however, did not err by determining that Reif had presented no evidence that the allegedly hazardous condition on the Renzes' land was a cause in fact or a proximate cause of Reif's injuries. In *Ray v Swager*, 501 Mich 52, 63-64; 903 NW2d 366 (2017), our Supreme Court explained:

> Proximate cause is an essential element of a negligence claim. It involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences. Proximate cause is distinct from cause in fact, also known as factual causation, which requires showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred. [Quotation marks and citation omitted.]

Here, even viewing the evidence in the light most favorable to Reif, there is no evidence that the Renzes' actions or inactions caused Reif's injuries. Rather than willingly or intentionally confronting the allegedly hazardous condition, Reif was injured when she was pushed into the lake by Morrell. Reif posits that, if Morrell had been aware of the allegedly hazardous condition, he would not have pushed her. In support, she directs this Court to the following statement by her expert:

> If a ladder and/or sign were present, they would display a warning/reminder of the hazards of diving/jumping into shallow water. Considering there is no evidence of mal intent, it is presumable if Mr. Morrell understood the danger, he would not have pushed Ms. Reif into the water, and this accident would not have occurred.

The expert's statement, however, is nothing more than speculation. See *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994) (explaining that speculation is "an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference."). "Speculation cannot create a question of fact." *Estate of Trueblood*, 327 Mich App 275, 289; 933 NW2d 732(2019). Here, although there was evidence supporting that Morrell did not intend to injure Reif when he pushed her into the water, that fact does not lead to a reasonable inference that he would not have pushed her if he had "understood the danger."

Instead, the record, viewed in the light most favorable to Reif, allows for a reasonable inference that Morrell's decision to push Reif would not have been impacted by either a ladder or a warning sign. Morrell was undisputedly aware of the allegedly hazardous condition. He testified at his deposition that he knew that the water was approximately four feet deep at the end of the dock, and he described that, just before he pushed Reif, the water reached the "chest area" on her six-foot tall boyfriend who was standing in the lake in front of the dock. Morrell, who grew up visiting the lakefront property, was "fairly familiar with the dock, and he stated that a "lot" of people would usually jump off it in order to swim in the lake. Despite his awareness of the shallow depth of the water, Morrell never advised anyone not to jump off the edge of the dock or warned them not to do so. Moreover, even after the incident in this case, he viewed what happened to Reif

to be a "freak accident." Thus, this record does not support a reasonable inference that Reif would not have been injured but for the Renzes' failure to install a ladder and post a warning sign.[4]

Because Reif cannot establish that her injuries were caused by a dangerous condition on the Renzes' property that they failed to warn her about, the trial court did not err by summarily dismissing her premises liability claim.

Affirmed. The Renzes may tax costs as the prevailing party. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Michael J. Riordan

---

[4] Reif's expert addresses at length the dangers of diving headfirst into water and he provided examples of warning signs that warned of the dangers of diving, rather than jumping feet first into the water. Many of the sample warning signs, in fact, depict individuals diving headfirst into water. In this case, however, Reif did not *dive* headfirst into the water. Instead, she was pushed into the water by Morrell. The push from Morrell did not cause her to dive forward; instead, she entered the water vertically and made contact with the lakebed. Reif's insistence that the Renzes are liable for allowing people to enter the water by diving is, therefore, misplaced.